UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN JONES,  ) | |
| ) | |
| Plaintiff,  ) | Case No. _____ |
| ) | |
| vs.  ) | **EXPEDITED RESOLUTION** |
| ) | **REQUESTED** |
| SYNERGIES3 TEC SERVICES, LLC, et al.,  ) | |
| ) | |
| Defendants.  ) | |

**PLAINTIFF'S COMBINED VERIFIED MOTION FOR TEMPORARY
RESTRAINING ORDER AND MEMORANDUM IN SUPPORT THEREOF**

Comes now Plaintiff Stephen Jones, by attorneys, and, pursuant to Fed. R. Civ. P. 23(d) and the Court's inherent authority to control conduct by the parties, respectfully moves this Court to issue of a temporary restraining order ("TRO") prohibiting Defendants from further attempts to settle the claims outside the participation of Plaintiff's counsel.  In support, Plaintiff states:

**I. OVERVIEW**

1. This is at least the fourth suit filed against Synergies3 Tec Services, LLC ("Snyergies3") seeking a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  It is also the third suit filed against Synergies3 seeking a class action under the Missouri Minimum Wage Law ("MMWL") and Fed. R. Civ. P. 23. All of these claims similarly allege that Synergies3's fails to pay overtime wages to its satellite television installation technicians ("Technicians").  Exs. 1-3; ECF Doc. # 1.

2. Synergies3 has attempted to avoid all three prior attempts to bring class and / or collective action claims by surreptitiously circumventing counsel to obtain "settlements" with named plaintiffs.

1

3. Plaintiff presents evidence herewith showing that Synergies3 has obtained such "settlements" through coercion and misleading statements.

4. After good faith efforts to resolve these issues directly with Synergies3's attorneys described below, Synergies3's counsel has intentionally chosen to "turn a blind eye" to their own client's misconduct, and Synergies3's attorneys have expressly ratified that misconduct.

5. Federal district courts hold a recognized duty to control communications between the parties to prevent such conduct. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100-01 (1981). Plaintiff requests that the Court promptly issue a TRO to prevent further misconduct, coercion, and improper attempts to undermine class and collective action litigation.

## II.  RELEVANT FACTS

A.     **Suit 1:** *Faulk v. Synergies3 TEC Services, LLC*

6. On April 17, 2017, Derek Faulk filed suit against Synergies3, and its owners, Benton Odom Jr. and Eric Atchley, in the Northern District of Texas. Mr. Faulk alleged that Synergies3 denied him and other Technicians overtime wages by misclassifying them as "independent contractors." Ex. 1; Ex. 4, ¶ 2 & referenced exhibit thereto. Mr. Faulk was a former employee of Synergies3 at that time. Ex. 4, ¶ 2.

7. Prior to the Defendants making an appearance, Mr. Faulk directed his counsel, Douglas Welmaker, to dismiss his claim because Synergies3 had directly offered him reinstatement to his former employment at a much higher pay rate in order to resolve that claim. *Id.*, ¶ 3.

8. Thus, Mr. Welmaker dismissed Mr. Faulk's lawsuit via a joint stipulation of dismissal. *Id.*, ¶ 3 & referenced exhibit thereto.

9. Synergies3 was represented by Jay Aldis of Bracewell LLP in Mr. Faulk's suit. *See* Answer & Stipulation of Dismissal attached to Ex. 4.

### B.     Suit 2:  *Glover v. Synergies3 TEC Services, LLC*

10. On May 30, 2018, Tyrone Glover filed suit against Synergies3 in the Circuit Court of the City of St. Louis, Missouri.  Like Mr. Faulk, Mr. Glover alleged that Synergies3 denied him and other Technicians overtime wages by misclassifying them as "independent contractors."  Ex. 2.  Mr. Glover was currently employed by Synergies3 at that time.  *Id.*, ¶ 17.  He was represented by Plaintiff's counsel in that suit.  *Id.*, at 23.

11. Synergies3's general manager, Sal Saleh, called Mr. Glover directly on a Friday after Synergies3 found out about the lawsuit.  Ex. 5, ¶ 2.

12. During that call, Mr. Saleh asked Mr. Glover what is going on with his lawsuit.  ***Mr. Glover stated that he did not think that they should be discussing the lawsuit because he had attorneys***.  Nevertheless, Mr. Saleh persisted by stating that he was talking to Eric [Atchley, one of Synergies3's owners], and they want a meeting with him on the next day, Saturday.  Mr. Saleh instructed Mr. Glover to go home and think about the amount of money he wanted to drop his lawsuit.  *Id.*, ¶ 2.

13. The next day, that Saturday, Mr. Glover met with Sal at Synergies3's workplace at 270 Fox Hill Road, St. Charles, Missouri, 63301.  There, Mr. Saleh told Mr. Glover that Mr. Atchley wants the lawsuit to go away, and wants Mr. Glover to give him a "number" to make it go away.  Mr. Saleh then called Mr. Atchley and put him on a speaker phone. Mr. Atchley asked Mr. Saleh how much workers' compensation he is owed.  Mr. Glover told him that he thought it was about $18,000.00.  Mr. Atchley said that he figured it would be about $15,000.00.  Mr. Atchley said that the company has workers' compensation insurance.  Mr. Glover said that his lawyer filed a workers' compensation claim, but he and his attorney received no response to that claim.  Mr. Atchley asked Mr. Glover if he knows "Ernie," then he said that Ernie did get workers'

3

compensation. Mr. Saleh then took Mr. Glover off of the speaker and Mr. Saleh went to a corner to speak to Mr. Atchley. Mr. Saleh then came back and told Mr. Glover that Mr. Atchley said that the company can get him some money, but it might not be for a while depending on how much Mr. Glover asks for. Mr. Saleh asked Mr. Glover if he thought about his number. Mr. Glover said "$60,000.00." Mr. Saleh told Mr. Atchley "$60,000.00." Mr. Glover heard Mr. Atchley say "ok," then Mr. Glover heard Mr. Atchley say that he was going to need Mr. Glover to sign something saying he won't sue again. Mr. Saleh then relayed to Mr. Glover that Mr. Atchley agreed to his $60,000.00 demand and that he needed to drop the lawsuit, then the company will pay him. Mr. Glover agreed. Mr. Saleh had Mr. Glover type up a letter saying that he would accept $60,000.00 for lost wages and injury. Mr. Glover typed up that letter and signed it. *Id.*, ¶ 4.

14. Later, Mr. Glover spoke to a friend of his who is an attorney, but is not one of the attorneys representing Mr. Glover against Synergies3. Mr. Glover sent Mr. Saleh an email based on what that attorney told him. *Id.*; ¶ 5 & referenced attachment.

15. Accordingly, Mr. Glover requested that his attorneys dismiss his claim against Synergies3. *Id.*; ¶ 6.

16. Mr. Glover informed Mr. Saleh when his lawyer, Eli Karsh, advised him that his suit was dismissed. *Id.*, ¶ 7 & referenced attachment.

17. Mr. Saleh gave Mr. Glover $30,000 in cash and had him sign a document. *Id.*, ¶ 8 & referenced attachments.

18. Synergies3 has failed to pay Mr. Glover the other $30,000.00 that it promised him in exchange for dismissing his suit. *Id.*, ¶ 9.

4

C.  **Suit 3:** *Alex Turner v. Synergies3 TEC Services, LLC*

19. On June 28, 2018, Alex Turner filed suit against Synergies3 in the Circuit Court of the City of St. Louis, Missouri.  Like Mr. Faulk and Mr. Glover before him, Mr. Turner alleged that Synergies3 has denied him and other Technicians overtime wages by misclassifying them as "independent contractors."  Ex. 3.  He was represented by Plaintiff's counsel in that suit.  *Id.*, at 14.

D.  **Good Faith Efforts to Resolve Disputes**

20. On July 6, 2018, Mr. Glover re-hired Plaintiff's counsel.  Ex. 6, ¶ 1.

21. Later that day, Mr. Glover's counsel emailed defense counsel Robert Kaiser and Jeremy Brenner the following email:

> Attached is hard evidence of Synergies3 making highly improper contacts with our clients and circumventing counsel in an effort to undermine our law suit and to escape a class or collective action.  We intend to file a motion to limit Synergies3's communications and to issue a corrective notice pursuant to *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981) and its progeny, unless we can work out a satisfactory resolution with you by the close of business on Tuesday.  We will not relinquish the right to offer the attached evidence to prove willfulness or to oppose your attempts to escape liquidated damages as part of any resolution.  We will also not relinquish our right to file claims based on the conduct reflected in the attached evidence as part of any resolution.  I will be in an all-day deposition in Virginia on Monday, so please contact my co-counsel, Eli Karsh.  I trust that the attempts to undermine our law suit will immediately cease.

Ex. 6, ¶ 2; Ex. 7.

22. On Tuesday, July 10, 2018, Mr. Brenner responded:

> I'm copying in Jay Aldis, lead counsel, who is with the Bracewell firm in Houston.
>
> We are still trying to get to the bottom of this due to our respective schedules between Friday evening and now. Admittedly, however, we are unclear about what you're asking for in terms of an agreement or resolution from our client. I don't see any evidence of improper coercion or misleading statements about the litigation. I'm not necessarily saying we can't or won't reach an agreement; I think we just need to get more information.

5

> Can we have a call tomorrow to discuss? Please let us know some times that would work on your end.

*Id.*

23. Mr. Glover's counsel responded, "Gentlemen -- We are available to discuss this matter at 9:30 (Central Time) tomorrow. Please call into Mark's conference line: 605-475-6700, then enter code 6792194." Ex. 6, ¶ 2; Ex. 8.

24. Mr. Glover's counsel further responded:

> To respond to your email below, courts may restrict communications that are misleading, coercive or improperly attempt to undermine a class or collective action. *See, e.g., Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667-68 (E.D. Tex. 2003).
>
> Synergies3 communications have been misleading in a variety of ways. It led Mr. Glover to believe that he was entering into a valid settlement of his FLSA claims, but a valid settlement requires court approval or supervision by the U.S. Department of Labor. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997). Further, Synergies3 engaged in multiple material omissions including, but not necessarily limited to, failing to adequately inform Mr. Glover of his right to speak to counsel before agreeing to a release and failing to explain liquidated damages and attorney fee recovery. Such omissions have been found to be "inherently misleading." *See, e.g., Potts v. Nashville Limo & Transp., LLC,* 2016 U.S. Dist. LEXIS 53217 (M.D. Tenn. Apr. 19, 2016).
>
> Synergies3's communications have been coercive Mr. Saleh insisted on attempting to settle directly with Mr. Glover despite Mr. Glover expressly informing him that he believed that settlement communications should be directed through counsel. *See* Glover Decl., ¶ 3. Courts view such communications with current employees as especially coercive. *See, e.g., Kleiner v. First Nat'l. Bank of Atl.,* 751 F.2d 1193, 1202-03 (11th Cir. 1985); *Camp v. Alexander,* 300 F.R.D. 617, 623 (N.D. Cal. 2014) (collecting cases).
>
> Synergies3 has also attempted to undermine a class and collective action through a surreptitious buyoff of a named plaintiff.

Ex. 6, ¶ 2; Ex. 9.

25. Counsel for the parties spoke by conference call at 9:30 a.m. on Wednesday, July 11, 2018. Mark Potashnick, Eli Karsh and Rick Grossman participated in the call for Mr. Glover. Jay Aldis and Jeremy Brenner participated for Synergies3.  Ex. 6, ¶ 3.

26. During that call, Mr. Aldis stated that he had not had a chance to speak to his client yet, had a call scheduled for 3:00 p.m. that day, and he would contact Plaintiff's counsel after speaking to his clients.  *Id.* Mr. Aldis also assured Plaintiff's counsel that "we don't want our client settling cases by themselves because they don't know what they are doing." *Id.*  Mr. Aldis said that he would like to commit that his client won't settle any more claims.  *Id.*  Based on those statements by Mr. Aldis, Plaintiff's counsel agreed to wait to hear more from Mr. Aldis. *Id.*

27. Shortly before 2:00 p.m. on Friday, July 13, 2018, Plaintiff's counsel followed up with Mr. Aldis by telephone and email because he had not heard back from him since the July 11, 2018 call.  Ex. 6, ¶ 2; Ex. 10.

28. About 3:30 p.m. that day, Mr. Aldis responded "I understand that Mr. Kaiser will be reaching out to you this afternoon." Ex. 6, ¶ 2; Ex. 11.

29. About 20 minutes later, Mr. Kaiser sent Plaintiff's counsel a letter informing them for the first time that Synergies3 had settled directly with Mr. Turner.  Ex. 6, ¶ 4; Ex. 12.

30. In that letter, Mr. Kaiser ratified his client's conduct by claiming there was a valid settlement on FLSA and MMWL claims and by demanding that Plaintiff's counsel dismiss Mr. Turner's suit.  *Id.*  Although Plaintiff's counsel previously suspected that Synergies3 had settled directly with Mr. Turner, Mr. Kaiser's letter was the first actual indication of such settlement. *Id.*

**E. This Suit**

31. On July 16, 2018, Plaintiff Stephen Jones filed this suit. Like Mr. Faulk, Mr. Glover and Mr. Turner before him, Mr. Jones alleged that Synergies3 has denied him and other Technicians overtime wages by misclassifying them as "independent contractors." ECF Doc. # 1. He is represented by Plaintiff's counsel in this suit. *Id.*, at 15.

32. Mr. Jones is currently employed by Synergies3. *Id.*, at 3.

### III.   ARGUMENT

33. The Supreme Court stated in *Gulf Oil Co. v. Bernard,* "[b]ecause of the potential for abuse, a district court has both the ***duty*** and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." 452 U.S. 89, 100-01 (1981) (emphasis added).

34. Federal district courts have a duty to restrict communications that are misleading, coercive or improperly attempt to undermine a class or collective action. *See, e.g., Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667-68 (E.D. Tex. 2003).

35. Synergies3 communications have been misleading in a variety of ways. First, the company led Mr. Glover to believe that he was entering into a valid settlement of his FLSA claims. However, a valid settlement of an FLSA claim requires court approval or supervision by the U.S. Department of Labor. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997). There was no court approval or DOL supervision of the supposed "settlement" of Mr. Glover's claims. Therefore, Defendants misled Mr. Glover to believe that he had entered into a valid settlement.

36. Further, Synergies3 engaged in multiple material omissions including, but not necessarily limited to, failing to adequately inform Mr. Glover of his right to speak to counsel before

8

agreeing to a release. In fact, the attached evidence shows that Mr. Glover expressed opposition to speaking to his manager directly about his claims, with the express explanation that he was represented by attorneys. Nevertheless, Synergies3 persisted in its efforts to settle directly with Mr. Glover.

37. As further examples of a material omissions, Defendants failed to explain to Mr. Glover about liquidated damages and attorney fee recovery. Such omissions have been found "inherently misleading." *See, e.g., Potts v. Nashville Limo & Transp., LLC,* 2016 U.S. Dist. LEXIS 53217, *34 (M.D. Tenn. Apr. 19, 2016) ("This failure to accurately discuss liquidated damages and attorney's fees makes any discussion of the class members' likely recovery inherently misleading.").

38. Moreover, the federal courts view such direct communications with current employees, such as Mr. Glover and Plaintiff Jones, outside the presence of their counsel, as especially coercive. *See, e.g., Kleiner v. First Nat'l. Bank of Atl.,* 751 F.2d 1193, 1202-03 (11th Cir. 1985); *Camp v. Alexander,* 300 F.R.D. 617, 623 (N.D. Cal. 2014) (collecting cases). *Potts* recently explained:

> The potential for coercion is high in unsupervised settlement communications between a defendant and a class member. First, courts have long recognized that a "unilateral communications scheme . . . is rife with potential for coercion," *Kleiner v. First Nat'l. Bank of Atl.,* 751 F.2d 1193, 1202 (11th Cir. 1985), particularly when class members are contacted directly and in person, see *Camp v. Alexander*, 300 F.R.D. 617, 623 (N.D. Cal. 2014). Second, the potential for coercion and abuse of the class action is especially high when there is an ongoing business relationship between the two parties, particularly when that relationship is one of employer to employee. See *Kleiner,* 751 F.2d at 1202-03; *Camp,* 300 F.R.D. at 622 (citing federal cases from California, Texas, and Georgia, and noting that "[o]ther courts have also noted the potential for coercion in situations where employers contact putative class member employees").

2016 U.S. Dist. LEXIS 53217, at *52-53.

9

39. Not only has Defendants' conduct been misleading and coercive, but it has also undermined class and collective actions through a surreptitious buyoffs of a named plaintiffs.

40. Defense counsel has ratified Defendants' conduct by claiming that parties have entered into valid settlements despite no court or FLSA supervision, and by demanding dismissal of Mr. Turner's claim based on an invalid settlement agreement.

41. Because the source of the Court's authority to enjoin abusive communications is Fed. R. Civ. P. 23(d) rather than Fed. R. Civ. P. 65 (governing preliminary injunctions and restraining orders), a party does not have to establish the four preliminary-injunction factors to obtain such an injunction. See *Kleiner,* 751 F.2d 1193, 1201 (11th Cir. 1985) (An order enjoining abusive communications is a "directive[] to counsel in their capacity as officers of the court, pursuant to the court's inherent power to manage its cases. . . . The more relaxed prerequisites of Rule 23[] therefore appl[y] . . . ."); *Tolmasoff v. GM, LLC,* 2016 U.S. Dist. LEXIS 85101, *30-31 (E.D. Mich. Jun. 30, 2016) (same, following *Kleiner*).  Moreover, in governing conduct of the parties, "he concerns and justification for judicial oversight apply in both instances, and courts apply the same standards in FLSA class actions as they do in Rule 23 actions." *Potts,* 2016 U.S. Dist. LEXIS 53217, at *49 (citing *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 171 (1989)).

42. The undersigned certifies that he has made good faith efforts to notify Defendants' counsel that he will appear for a temporary restraining order.  Specifically, on July 15, 1018 Plaintiff's counsel emailed defense counsel a notice of intent to appear at the clerk's office at 9:00 a.m. on July 16, 2018.

43. Plaintiff's proposed Order is attached hereto.

## IV.   CONCLUSION

Plaintiff has presented a clear evidentiary record showing that all three of the disjunctive

criteria for court action ((1) misleading conduct, (2) coercive conduct and (3) undermining class or collective actions) recognized in cases such as *Belt* for court intervention have been fulfilled. For all reasons stated above, this Court should issue a TRO enjoining Defendants from any attempt to directly settle the claims of Plaintiff Jones and / or any opt-in Plaintiff.

## V.  PRAYER

WHEREFORE, Plaintiff prays this Court issue a temporary restraining order prohibiting Defendants from attempting to settle claims directly with Plaintiff Jones and / or any opt-in Plaintiff, for Plaintiff's attorney's fees and litigation costs incurred herein, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,
          *s/ Mark Potashnick*

**WEINHAUS & POTASHNICK**
Mark Potashnick, E.D. Mo. # 35970
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

**GROSSMAN LAW FIRM**
Richard T. Grossman, E.D. Mo. Bar # 36218
230 S. Bemiston Ave., Suite 1200
St. Louis, Missouri 63105
Telephone: (314) 261-7323

Rick@grossmanlawfirm.com

**LIBERMAN, GOLDSTEIN & KARSH**
Eli Karsh, E.D. Mo. Bar # 47524
230 South Bemiston Ave., Suite 1200
Clayton, Missouri 63141
Telephone: (314) 862-3333 ext. 13
Facsimile: (314) 863-0605
elikarsh@aol.com

**ATTORNEYS FOR PLAINTIFF**